DeLee v. City of Plymouth DeLee v. City of Plymouth, Indiana DeLee v. City of Plymouth, Indiana May it please the Court. I'm Jody Dannis with the United States Department of Justice, and I am here today representing Technical Sergeant Robert DeLee. Sergeant DeLee filed suit under the Uniformed Services, Employment, and Reemployment Rights Act to recur longevity pay benefits that the City of Plymouth should have provided him when he returned from his eight-month deployment for military service. He's here appealing the District Court's resolution of cross-summary judgment motions against him, and today Sergeant DeLee asked the Court to vacate summary judgment for the City and instead enter it in his favor. This appeal turns on which of two USERRA provisions the longevity pay falls under. If the true nature of longevity pay benefit is to reward and incentivize police officers' long and continuous service to the City, then it is a seniority-based benefit that USERRA require the City to pay Sergeant DeLee in full under Section 4316A. If, as the City argues and we dispute, the benefit is simply a form of short-term compensation for services actually rendered, then the benefit is covered only under 4316B's nondiscrimination standard. There are five main reasons that Sergeant DeLee believes summary judgment should be reversed and entered instead in his favor. First, the District Court erred by failing to use the second prong of the two-pronged analysis that the Supreme Court set out in Alabama Power and Coffee, under which the Court should have determined the essential function or dominant purpose of the overall longevity pay benefit. Instead, the Court followed the City's lead to split what is actually provided as a single longevity pay benefit into two supposedly distinct benefits that the City generated solely for this litigation, which really just represent the elements of the calculation formula. And if there's any doubt that the City is contending there are two separate and distinct benefits here, pages 21 through 22, and 43 of the brief explicitly speaks of this longevity pay benefit as if it was two separate benefits. Well, there's a distinction though, isn't there, between the rate and the amount? Well, the way that the City calculates the actual benefit that is awarded to somebody includes several aspects. It does multiply $225, which is the increment, by the years of service. And then if a leave of absence of more than a month has been taken, they do apply a calculation to prorate it. But the benefit, there is no benefit in just the calculation itself. The benefit, of course, is what the person actually receives at the end of the day. But the compensation, you know, under the local ordinance is based on work, as I understand it. And that seems to be across the board, regardless of what the reason is for going, leaving. And when they go into the military, they obviously are not doing police work at home. Certainly not. And Mr. DeLee is not here asking the City to pay him the wages he actually would have earned on a weekly or hourly basis while he was deployed. But what's at issue here is whether or not this type of payment is based on longevity or is intended to reward and incentivize long and continuous City employment. The benefit here really can't be short-term compensation because officers receive none of that benefit. Zero the first three years of their employment with the City. So although there is, of course, an attempt by the City to put some work hours worked aspect on it, that doesn't distinguish this case from Alabama Power or a cardi or a coffee where some portion of the formula does include some aspect of time worked. That is not enough to convert this benefit, though, into short-term compensation. If the City had basically taken the same amount of money for its police officers and firefighters and just paid that in the biweekly paychecks, would there be a problem? Well, again, as it is set up now, if they did not receive any of that benefit called longevity pay, no matter if it was spread out or at the end for the first three years of employment, we'd have a hard time seeing that as compensation. Change the name? You just start paying your people after they've been there more than three years? You just start paying them a little more? Sure. That's perfectly okay, right? Well, it would be okay if an hourly rate is increased as the person progresses, and that would probably demonstrate an intent to actually compensate only for hours someone is specifically working. When you're paying it on an hourly basis, a five-cent increase per hour, that would be, I think, more clearly an attempt to provide it as any other wages. That, of course, is not the situation. Ms. Danis, do we see this kind of compensation around the country? I'm a little curious about why you all got so motivated to pursue this. We are here because we think that there are, to date, really no decisions under USERRA that have addressed this particular type of benefit. Does it happen a lot? I've never seen it before. This benefit certainly is out there. I'm not prepared to say what percentage of jurisdictions offer it, but certainly we think that this is an important issue under USERRA to define very clearly and not let employers thwart Congress's purpose in USERRA, which is to make sure that men and women who step away from their civilian workplaces to serve aren't deprived of the benefits that flow from seniority that they would have achieved had they not responded to the call to service. Ms. Danis, in your brief, you all ask us, you want a remand for a finding regarding willfulness. Excuse me? You seek a remand for a trial on the issue of willfulness? Well, we do seek entry of partial summary judgment in his favor, and, yes, there has not been resolved that issue of liquidated damages. Given what you've just described as the lack of controlling law, the fact that the district judge reasonably viewed this differently, how could this possibly be willful? I'm not sure I think that it was reasonably viewed because there is controlling precedent under USERRA's predecessors, Alabama Power and Coffee. Well, I'll just tell you, there's plenty of room for debate about this case. I understand, Your Honor. I think the most pertinent fact here And you've got a work requirement, which under Foster goes at least a pretty fair way for the employer. I think Foster is distinguishable, and I do want to point out that one distinction that the city made in its brief is actually inaccurate. In Foster, there was not even the one-year threshold before you could start earning vacation pay. In footnote 2 of Foster, it actually says that Mr. Foster was eligible to and did, in fact, earn some amount of vacation hours for his first year of employment under the CBA. Foster is quite distinguishable because there, there was an effort to compensate for overtime hours. First, people could earn more of the benefit for overtime hours worked. There was no threshold, as there is here, of an entire three years where you're not receiving the supposed short-term compensation, not even on a deferred basis. These are the things that the Supreme Court in Coffee and Alabama Power found dispositive of the true nature of the benefit as a reward for lengthy and continuous service. The whole purpose of this, I guess, is just an incentive to stay with the force. Yes, and that is exactly what the city's brief talks about on page 47. It says we gave this longevity pay because these are valuable employees that are unique, highly specialized, and highly trained, and municipalities have a lot invested in these employees. They want to keep them. They want to keep them in lengthy employment, and that is the dominant nature. Longevity plays a role in every aspect. Your monthly benefit, if you want to look at it on a monthly basis, is higher based on longevity, even if it's prorated for a particular year, and the city concedes that point on page 23 of their brief. He would have received $50 less for his 12th year had longevity not played a role. Longevity here is the dominant purpose, rewarding that longevity, and I would like to reserve a couple minutes for rebuttal unless the panel would like to continue with questions. Thank you. If I could just ask, during the time that Mr. DeLee was absent from the city, did the city continue to cover health insurance and make pension contributions? I am not aware of those facts. UCERA has its own provisions for health insurance and pension. I'll ask the city. Okay. Thank you, Ms. Dennis. Mr. Cerisi? May it please the Court, Sean Cerisi on behalf of the city of Plymouth, and to Judge Hamilton's question, it's not on the record I'm not entirely certain whether with respect specifically to Mr. DeLee, if those payments were made, although I do know I can say we recently had another employee apply for a military leave, and there's a whole list of documents that are provided to him to let him know of their eligibility and how that all works out, but with respect to him, I'm not certain. The city's position with regard to this is the Supreme Court precedent that's been cited in our briefs and Mr. DeLee's briefs, the Alabama power and coffee cases, while law of this court and all around the country have said that you look to those as instructive, all of the cases that have interpreted predecessors to USERRA, to the extent that they still make sense with the language of the statute. And one big difference that's important here is all of those cases were decided under predecessors where there was not yet a definition of the term seniority. And another factor to take into account is since USERRA was enacted, the Department of Labor has implemented regulations that say how that should be executed. And at 20 CFR 1002.212, it codifies that two-prong analysis from Alabama Power, but it also adds a third factor based from a prior case in the Supreme Court that says you also look to the custom and practice of how an employer has actually implemented their plan. And it says that if the policy that's in a handbook or in whatever provision that you're drawing on isn't actually followed through with, then that discounts the weight of that. But here, the undisputed facts, which the district court relied upon, show that custom and practice over the 11th and 12th year of Mr. DeLee's employment. Clerk-Treasurer Tony Hutchings, who is in charge of the payroll, provided her testimony about how these benefits are calculated, how she did so during the 11th year of DeLee's employment where he worked for the entire year. And during the 12th year, she applied the proration calculation based on the work requirement. Well, it sounds like the mirror image, you're very critical of the federal government's argument that we ought to defer to whatever they say the law is, and it sounds like you're telling us we ought to defer to whatever you say the law is. Because you administer Ordinance 1480 this way, that's all we need to know. Well, no, I would disagree with that, Judge Hamilton. Our position is that there's no conflict between the city's ordinance and the provisions of USERRA, because the only part of the benefit that was seniority related is the rate of pay increase, which simply accrues for being on the payroll, which he did receive. And Mr. DeLee contends that he received none of the benefit from that seniority increase in the rate of pay. The district court disagreed, and as Ms. Danis attested to earlier, that there was a $50 increase in the annual payment that he made because his rate had gone up. He's still with the police? He still is, yes. And he's getting paid longevity pay at this point as if he had never been gone? I'm sorry, I didn't understand the question. He got that in calculating his longevity pay after his return, he's treated as if he had not been gone. Yes, he was counted as just the $1,800 or so. Right. He was given credit for his rate of pay for that full year. Another key distinction between the Alabama power and coffee cases are the fact that in Alabama power, at the district court level, which ruled for the plaintiff and it was affirmed all the way up through the Supreme Court, the district court said that there is no evidence in this case to show that the pension plan is based on any unit of work. And similarly, in the coffee case, the Supreme Court noted that in that case, the district court had ruled in favor of the employer, and then ultimately the Supreme Court ruled for the employee. But the Supreme Court there said the district court's determination that the supplemental unemployment benefit plan was a bona fide effort to compensate for work actually performed was at odds with the literal terms of the plan. So here we actually have the literal terms of Ordinance 1480. The purpose is to implement a work requirement. It's very clear in both its preamble and its operative language that that's what the city was trying to accomplish. What other circumstances would that prorating kick in besides a military leave? Any type of approved leave. For example, an FMLA leave or if our city council were to, under our employee handbook, has the authority to grant any kind of approved leave of absence if you wanted to take a sabbatical or something like that. I don't know that that's ever happened. So what has happened? I assume you've been the city attorney for a while. Two and a half years or so now. All right. But what? I'm not aware of any other leaves in the time that I've been here that we've had to deal with, other than I just mentioned there's one coming up that happens to be a military leave. Counsel, you pointed out that USERRA differs from its predecessors by having introduced a definition of seniority. In the statute, that definition is pretty broad. Longevity and employment together with any benefits of employment which accrue with or are determined by longevity and employment. It doesn't say determined solely by longevity. So that seems to reach pretty broadly, and the Supreme Court keeps finding ways to rule in favor of employees. Sure. Our position with respect to that is the accrual language is key, that longevity and employment in this context we view as just simply time on the payroll, rather than continuous work being provided. So we would see that as a distinction in that definition there. So under your theory, any work requirement is sufficient to defeat a seniority-based claim here? Or does it depend on whether there's some sensitivity to how much work is done, whether it's how loose or how tightly it's tied to the hours worked? Well, I guess my answer would be no. Any work requirement I don't think would pass muster. I think it's a very fact-specific inquiry, but the Supreme Court in Foster told us that the work requirement doesn't have to be closely tied to the actual benefits. So there is some latitude there, and I'm sure there are plenty of cases that you could think of where it would probably lean toward the Accardia case where they said this was an absurd result. I'm not prepared to say here that, as a blanket rule, any work requirement is fine. But certainly the city's, I think, has been the undisputed testimony that only affidavit that was provided in these cross-summary judgment motions supports that there is a work requirement that's valid here, shows the custom and practice, and Officer DeLee had the opportunity to rebut that and has failed to do so. With regard to vacation pay while someone's somewhere else, that was a work requirement to, I believe, in Foster, wasn't it? Yes, it was. And what we have here is the local rule, as the auditor or whatever she was, what clerk, treasurer, pointed out, this is how it is applied, and there is a work, a presumed work requirement, which distinguishes it from maintaining seniority. Seniority, they didn't lose, somebody that got in later didn't jump ahead of them in seniority. They maintained that. That's correct. He maintained his seniority. And so that is the seniority. And then the rate, they maintained the rate. They didn't lose that in the absence. But what they did lose in the absence was what at least the ordinance requires is a work-related benefit that attaches to this. And that's what this ordinance is. And it's a question of whether that violates USERA. I don't, well, I guess that's what we'd have to look and see. I would agree with that, yes. And with that, I see, oh, I guess I do still have a little time. I would want to add just one more point, if I may. I don't know that this is a deciding distinction, but I would point out that the cases relied upon by Mr. DeLee, the Alabama Power, the coffee decision, they all involve benefits that an employee is not entitled to until either retirement or layoff, sometime where you're at the conclusion of your employment. CARDI, the separation allowances when folks are leaving their employment, I think that's distinct from foster where we're dealing with the vacation benefit, and here we're with the longevity pay where it's something that's paid to an ongoing employee while he maintains that relationship with the employer. And with that, the city would ask that this court affirm the district court's judgment. I'll just say that I appreciated the window on our colleague Judge Posner's early career that you provided for me. I found that very interesting. More argument than a Cardi. Thank you, Your Honor. Ms. Vannis. I appreciate that opposing counsel has brought out USERRA's seniority definition because it would be hard probably to find a benefit that more squarely fell within that definition of seniority. The definition of seniority under USERRA includes longevity in employment and benefits that accrue with or are determined by longevity. Here, the question isn't whether there's a work requirement or whether this is compensation. There are both, but that's simply not dispositive. The Supreme Court has said that the correct analysis is what is the common understanding of the purpose of this benefit and do the specific features of the plan match that common understanding or not. Here, the common understanding of providing longevity pay is to incentivize and reward lengthy and continuous employment with the city of Plymouth. This can't be short-term compensation because they don't receive any compensation for their first entire three years. The Supreme Court in Coffey said that that type of a threshold requirement is the hallmark of a benefit that is based on longevity rather than intended to provide short-term compensation. Here, the custom and practice, we have an example of one. Some of the things that were discussed here were outside the record. In fact, the affidavit highlights that the city paints with a broad brush. They are not trying to closely link hours worked with this compensation. In fact, it's not even clear how much of a month one has to work to get credit for a month. Someone could be out for three weeks on vacation, sick leave, jury duty, and still get a month of credit. So there simply isn't any indicia here of an intent to compensate for work actually performed. And in fact, the Supreme Court has found in Coffey that, unlike in Foster, there is no provision for any work beyond a 32-hour work week or overtime, and that was not the hallmark of a benefit that is intended to compensate on a short-term basis for work actually performed. Under those Supreme Court decisions, this clearly is a benefit of employment that accrues with and is determined by longevity and was fully payable to Sergeant Lee when he returned. Thank you, Ms. Adams. Thanks to all counsel. The case is taken under advisement. The court will stand in recess.